**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-CV-00087-HBB**

**JAMES C. PYANOWSKI**                                                      **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of James C. Pyanowski ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 22) and Defendant (DN 25) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 20).   By Order entered October 1, 2020 (DN 21), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

On November 9, 2016, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 15, 220-27, 228-29).   Plaintiff alleged that he became disabled on February 15, 2016 as a result of post-traumatic stress disorder ("PTSD"), anxiety, and depression (Tr. 256).   Both applications were denied initially on February 17, 2017, and upon reconsideration on May 5, 2017 (Tr. 15, 74-89, 90-105, 106-22, 123-39).   Thereafter, Plaintiff filed a written request for hearing before an Administrative Law Judge (Tr. 15, 163-67).

On December 11, 2018, Administrative Law Judge John R. Price ("ALJ") conducted a hearing in Bowling Green, Kentucky (Tr. 15, 46).[1]   Plaintiff and his counsel, Charles Dale Burchett, attended the hearing (Id.).   William R. Harpool, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated February 19, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-25).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 15, 2016, the alleged onset date (Tr. 17).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, obesity, bronchitis, depression, and anxiety (Id.).   The ALJ also determined that Plaintiff's migraines are "non-severe" (Tr. 17-18).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in

---

1 The transcript of the administrative hearing indicates Administrative Law Judge John R. Price ("ALJ") conducted the hearing in Louisville, Kentucky (Tr. 44, 46).   By contrast, the administrative decision indicates the ALJ conducted the hearing in Bowling Green, Kentucky (Dr. 15).   The Court selected the location identified in the ALJ's decision.

Appendix 1 (Tr. 18).   Additionally, the ALJ specifically considered and found that Plaintiff did not meet or medically equal Listing 1.04, listing 3.02, and any listing at 12.00 (Tr. 18-19).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except that he can only stand/walk four hours in an eight-hour day, and he needs an option to alternate between a seated and standing position every 30 minutes taking just a minute or two to change positions; he can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs, but he may never climb ladders, ropes, or scaffolds; he may not be exposed to vibrations, temperature extremes, hazards, or pulmonary irritants such as dust, fumes, and gases; he can tolerate occasional superficial interaction with coworkers and supervisors, but he may not perform tandem work, and he may not interact with the general public; he is limited to simple and routine tasks with little or no change in the workday and no fast-paced or quota driven work (Tr. 19).   The ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any past relevant work (Tr. 24).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 24-25).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from February 15, 2016, through the date of the decision (Tr. 25).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 217-19).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and

4

Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term

"disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than twelve (12)
> months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923

(6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable
        impairment or combination of impairments that satisfies the
        duration requirement and significantly limits his or her
        ability to do basic work activities?

3)      Does the claimant have an impairment that meets or
        medically equals the criteria of a listed impairment within
        Appendix 1?

4)      Does the claimant have the RFC to return to his or her past
        relevant work?

5)      Does the claimant's RFC, age, education, and past work
        experience allow him or her to perform a significant number
        of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

Finding No. 3

1.  Arguments of the Parties

Plaintiff argues substantial evidence does not support the ALJ's finding that his migraine headaches are non-severe (DN 22 PageID # 1448-51).   In support of his position, Plaintiff cites a November 2016 MRI depicting a cystic brain tumor in the posterior fossa compressing the brain stem and treatment records memorializing his claims about the frequency and severity of the migraines, medications prescribed with no apparent effect, and the regularity of treatment from May 23, 2016 through October 2018 (Id. citing 417, 419, 422, 457, 460, 468, 470, 588, 626, 803, 805, 811, 1333-34.   Plaintiff contends these medical records refute the ALJ's observations about large gaps in treatment between the fall of 2016 until 2018, his not seeking specialized treatment, wholly routine modalities, and his not being on prescription medication (Id.).   Additionally, asserts Plaintiff, the ALJ improperly relied on testing indicators such as speech, concentration, gait, balance, and coordination deficits to reflect symptoms that have consistently been described as episodic in nature (Id.).   Plaintiff argues the ALJ's error at step two is not harmless because the RFC assessment does not impose limitations addressing the frequency and severity of his migraines and the ALJ did not consider the impact such limitations would have on Plaintiff's ability to perform full time work (Id.).

Plaintiff additionally argues the ALJ failed to consider whether his hip condition is a severe impairment (Id. PageID # 1451-52).   Plaintiff explains that a 2013 motor vehicle accident caused a comminuted subtrochanteric right femur shaft fracture that required surgical intramedullary nailing (Id. citing Tr. 553, 1165, 1168).   A recent abdominal CT scan showed post-surgical changes to the right femoral neck and right hip (Id.).   Additionally, a physical examination

6

showed painful and decreased motion of the right hip on flexion, extension, and internal/external rotation and Pain management examination showed hip findings (Id. citing Tr. 544, 1278). FABRE testing was positive, Plaintiff exhibited hip and groin pain, SI joints showed pain upon examination and a treating neurosurgeon suggested sacroilitis and additional bilateral hip pain were a source of symptomology over spine disease (Id. citing Tr. 37-39).   Plaintiff argues the ALJ's error at step two is not harmless because the RFC assessment does not impose limitations addressing the problems in motion, pain in the hip, and need for assistance in standing from a couch or chair (Id.).   Further, the ALJ did not consider the impact such limitations would have on Plaintiff's ability to perform full time work (Id.).

Defendant asserts the failure to find these two conditions are severe impairments is harmless because the ALJ considered all of Plaintiff's conditions in the remaining steps of the disability determination (DN 25 PageID # 1463-64, citing Tr. 17 and Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).   Alternatively, Defendant relies on medical records from September, October, and November 2016 to argue despite Plaintiff's complaints to Dr. Chou about headaches he had unremarkable mental and physical exams, a normal EEG, and an MRI that showed an arachnoid cyst causing "slight cerebellar mass effect," but there was no acute infarct or hemorrhage, and only "minimal white matter disease" (DN 25 PageID # 1464, citing Tr. 17-18, 241, 417, 418, 419, 420, 422, 423, 424, 626).   Defendant acknowledges that Plaintiff takes issue with the ALJ's finding about significant gaps in treatment until 2018 (Id. PageID # 1464-66).   But Defendant points out that Plaintiff only cites three instances where he purportedly complained of migraines in all of 2017, and these records actually confirm the accuracy of the ALJ's finding because Plaintiff was not treated for headaches on any of these

occasions (Id.).   Defendant also points out Dr. Miller's February 2018 medical records do not substantiate Plaintiff's claim that he sought treatment for headache symptoms occurring every three days (Id. citing Tr. 803).   Defendant further points out, consistent with the ALJ's characterization of the record, Plaintiff's next actual treatment for headaches was at an emergency room in October 2018 (Id. PageID # 1467-68 citing Tr. 1332-33).

Defendant contends that Plaintiff's allegations about hip pain claim are equally unavailing (Id. PageID # 1469-77).   Defendant asserts that the June 2016 x-rays showed the hardware from the prior open reduction and internal fixation ("ORIF") surgery was intact and "otherwise negative" (Id. citing 463).   The treatment notes revealed a normal gait, normal range of motion, full strength, and his non-compliance with physical therapy (Id. citing Tr. 530, 532, 544, 545, 811, 1278).   Additionally, Defendant points out that Plaintiff's doctors denied his multiple requests for narcotics, and no one recommended surgery or anything other than conservative treatment for his hip (Id.).   Further, Defendant points out that no doctor ever opined that Plaintiff's headaches or hip pain would cause any functional limitations (Id.).   Defendant asserts that the ALJ properly based Plaintiff's physical RFC finding on the only medical opinion of record, that of the state agency reviewing doctor on reconsideration, but properly included additional restrictions to account for later evidence and Plaintiff's subjective complaints (Id.).

2.  Discussion

At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-

3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).   To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work activities."   20 C.F.R. §§ 404.1522(a), 416.922(a).   The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1522(b), 416.922(b).   To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment.   20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).   To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."   20 C.F.R. §§ 404.1509, 416.909.

Regarding the migraine headaches, the relevant part of the ALJ's decision reads as follows:

> The claimant's migraines are nonsevere (1F).   The claimant sought treatment for migraines that occur 3 times a month and last 2 to 3 hours associated with light sensitivity (1F).   Mental and physical examinations for speech and concentration deficits were negative, as were neurologic tests for gait, balance, and coordination (1F). An MRI of the brain showed an arachnoid cyst causing slight mass effect on the cerebellar (1F).   However, *after treatment in the fall of 2016, there are significant gaps in treatment until 2018* (6F). The claimant did not seek any specialized treatment, he has not received injections, and he is *not even on any prescription medication* (25E).   The large gaps in treatment and wholly routine modalities do not support the frequency and severity of headaches alleged.   As such, the undersigned does not find evidence of significant work-related limitations persisting for 12 months.

(Tr. 17-18) (emphasis added).   Plaintiff has demonstrated that the ALJ, in making the above findings, overlooked May and August 2016 treatment notes from the TJ Samson Family Medicine Center in Exhibit 2F (Tr. 429-521).   The May 2016 treatment note mentions Plaintiff's migraines

9

and his requesting a neurology referral (Tr. 468).   Dr. Clouse prescribed Diclofenac 75 mg.

recommended taking Tylenol and Ibuprofen as needed and made a referral to neurology (Tr. 470).

The August 2016 treatment note advises Plaintiff complained about his migraine headaches and

Dr. Fisher instructed him to discontinue over the counter pain remedies and prescribed Topamax

25 mg. once daily and Imitrex 25 mg. when the migraine begins (Tr. 457-61).   But these medical

records merely precede Plaintiff's referral to Dr. Chou, a neurologist at the Graves Gilbert Clinic,

whose testing and treatment records from the fall of 2016 are set forth in Exhibit 1F (Tr. 417-19,

420, 421, 422-24).   The ALJ accurately summarized the Exhibit 1F medical records in the above

quoted paragraph.   In sum, the ALJ's omission concerning the May and August 2016 treatment

notes is harmless error.

Next, Plaintiff asserts the ALJ erred in finding that after the fall of 2016 there are significant

gaps in treatment until 2018.   In support of his assertion, Plaintiff identifies medical records from

March, April, and September 2016 where he purportedly complained of migraines in 2017.   But,

as Defendant aptly points out, those medical records actually confirm the ALJ's finding.   In

March of 2017, Plaintiff went to the hospital emergency room for treatment of viral gastroenteritis

and merely identified chronic headache and migraine headache in a list of 31 health problems (Tr.

587-88).   In April 2017, during an initial consultation with Dr. Miller for treatment of chronic low

back pain, Plaintiff also complained of migraine headaches described their symptoms, frequency,

and indicated he was taking Topamax for this condition (Tr. 811).   Notably, Plaintiff did not seek,

nor did Dr. Miller render, treatment for migraine headaches (Tr. 811-13).   In September 2017,

during another back-pain appointment with Dr. Miller, Plaintiff again complained of migraine

headaches "but is not currently taking anything for pain control" (Tr. 805).   Again, Plaintiff did not seek, nor did Dr. Miller render, treatment for this condition (Tr. 805-06).

Plaintiff's reliance on Dr. Miller's February 2018 treatment note is equally unavailing. Contrary to Plaintiff's assertion, it does not indicate he sought treatment for headache symptoms occurring every three days (Tr. 803).   Instead, the treatment note indicates Plaintiff returned to Dr. Miller for treatment of increased low back pain radiating to his hips (Id.).   But it does mention Plaintiff "also complains of pain at the base of skull and headaches that occur every three days, currently taking Methocarbamol for headaches" (Id. citing Tr. 803).   Again, Dr. Miller did not render treatment for this condition (Tr. 803-04).

Plaintiff has not identified, nor has the Court found, any medical evidence in the record documenting actual treatment for headaches or migraines after the appointment with Dr. Chou on November 2, 2016, until Plaintiff's emergency room visit 23 months later in October 2018 (Tr. 1332-33).   The October 2018 treatment note indicates Plaintiff described the severity of the episodic tension-type headache as "moderate" and "the issue is just that he didn't get the Advil in time to help" (Id.).   In sum, substantial evidence supports the ALJ's finding that after the fall of 2016 there are significant gaps in treatment until 2018.

Next, Plaintiff asserts the ALJ "also mischaracterizes the evidence by concluding that Plaintiff was not prescribed medication for headaches" (DN 22 PageID # 1450).   But Plaintiff's assertion is based on a misunderstanding of what the ALJ indicated in the decision.   Specifically, the ALJ observed that "[Plaintiff] is not even on any prescription medication" and cited the list of medications that Plaintiff himself prepared and signed on September 17, 2018 (Tr. 18, 407).   That list does not identify any prescription medication for migraine headaches (Tr. 407).   Further,

Plaintiff's own testimony during the December 11, 2018 hearing supports the ALJ's finding. Specifically, Plaintiff testified that Dr. Chou and the other doctors were not able to prescribe a medication that helped with his headaches, so he uses Advil and Biofreeze to ease the pain and he goes to sleep for a while (Tr. 65-66).   Thus, substantial evidence supports the ALJ's finding that Plaintiff is not currently on any prescription medication.

Plaintiff also contends the ALJ improperly relied on testing indicators such as speech, concentration, gait, balance, and coordination deficits to reflect symptoms that have consistently been described as episodic in nature.   However, Plaintiff's contention is again based on a misinterpretation of the ALJ's decision.   The ALJ merely provided an accurate summary of the medical evidence received from Plaintiff's treating neurologist, Dr. Chou, in the fall of 2016 (Tr. 17, 417-24).   Specifically, the "[m]ental and physical examinations for speech and concentration were negative, as were neurologic tests for gait, balance, and coordination" (Tr. 17-18, 417-24). Further, the ALJ accurately summarized Dr. Chou's comments regarding what the MRI of Plaintiff's brain revealed (Tr. 18, 421).   The ALJ then acknowledged the significant gaps in treatment, Plaintiff not seeking any specialized treatment, and Plaintiff not currently taking any prescription medication (Tr. 18, 407, 618-49).   The ALJ then concluded "[t]he large gaps in treatment and wholly routine modalities do not support the frequency and severity of headaches alleged [by Plaintiff]" (Tr. 18).   Substantial evidence in the record supports the ALJ's evaluation of Plaintiff's symptoms.

In sum, substantial evidence in the record supports the ALJ's conclusion that Plaintiff's migraine headaches are a non-severe impairment.   Moreover, because the ALJ did not find evidence of significant work-related limitations persisting for 12 months (Tr. 18), he had no basis

to include migraine related functional limitations in the RFC determination at the fourth step.   20 C.F.R. §§ 404.1546(a) and (e), 416.945(a) and (e).

Next, Plaintiff argues the ALJ failed to consider whether his hip condition is a severe impairment.   But evidence in the administrative record is not particularly helpful to Plaintiff's claim.   At the initial level, Plaintiff did not even identify a hip impairment in the list of physical and mental impairments that limit his ability to work (Tr. 256).   At the reconsideration level, Plaintiff reported sometimes experiencing hip pain so bad that he needs help getting up from a chair, couch, or toilet (Tr. 340-41).   Further, during the administrative hearing, Plaintiff made only one brief comment about his hip (Tr. 46-69).   Specifically, Plaintiff testified that he quit working at Mid-State Recycling because the physical activity hurt his lower back, hips, and legs (Tr. 63).   These statements alone are not enough to demonstrate the hip condition is a severe impairment.   Additionally, neither prior to nor during the administrative hearing did Plaintiff specifically request the ALJ consider whether his hip is a severe impairment (Tr. 46-73).   Nor did Plaintiff identify to the ALJ evidence in the record demonstrating hip condition is a severe impairment (Id.).   Ultimately, Plaintiff failed to meet his burden of demonstrating his hip impairment is a medically determinable physical impairment that meets the duration requirement and significantly limits his physical ability to do "basic work activities."   20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1522(a), 416.920(a)(4)(ii), 416.922(a); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).

Alternatively, so long as an Administrative Law Judge finds that other impairments are severe, continues with the sequential evaluation process, and considers all of a claimant's

13

impairments in the remaining steps, the error is harmless.  *See* <u>Maziarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d 240, 244 (6th Cir. 1987); <u>Mish v. Comm'r of Soc. Sec.</u>, No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); <u>Stephens v. Astrue</u>, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); <u>Meadows v. Comm'r of Soc. Sec.</u>, No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); <u>Jamison v. Comm'r of Soc. Sec.</u>, No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); <u>Tuck v. Astrue</u>, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).   Here, at step two the ALJ found that Plaintiff's degenerative disc disease, obesity, bronchitis, depression, and anxiety are severe impairments (Tr. 17).   The ALJ continued with the remaining steps in the disability determination.

At step four, in the context of assessing Plaintiff's RFC, the ALJ considered the third-party function reports prepared by Plaintiff's wife and mother which mention Plaintiff experiencing hip pain and sometimes needing help rising from a toilet, chair, or couch (Tr. 266-67, 317-18). Notably, those third-party reports also indicate Plaintiff spends hours each day playing video games on his Xbox (Tr. 265, 321), an activity normally performed while seated.   The ALJ determined that significant weight cannot be given to these third-party reports because they were simply not consistent with the preponderance of the opinions and observations by medical doctors in this case (Tr. 23).   The ALJ apparently considered Plaintiff's report at the reconsideration level which indicated he experiences hip pain so bad that he needs help getting up from a chair, couch, or toilet (Tr. 20-21, 340-41).   But in that report, Plaintiff also mentioned spending a substantial part of his day playing video games (<u>Id.</u>), an activity normally performed while seated.   During the administrative hearing Plaintiff made only one brief comment about his hip (Tr. 46-69).

14

Specifically, Plaintiff testified that he quit working at Mid-State Recycling because the physical activity hurt his lower back, hips, and legs (Tr. 63).[2]   The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 21).   But, more importantly, the ALJ's physical RFC assessment imposed exertional limitations[3], postural limitations[4], and environmental limitations[5] that indicate he considered all of Plaintiff's physical impairments, including hip pain, in the remaining steps (Tr. 19-24, 24-25).   Therefore, if the ALJ erred in failing to find the hip condition is a severe impairment, the error is harmless.

Finding Nos. 5, 10 and 11

Plaintiff contends they are not supported by substantial evidence due to the ALJ's failure to consider the effects of the omitted severe impairments (DN 22 PageID # 1453-54).   For the reasons set forth above, there is no merit to Plaintiff's contentions about the migraines and hip pain.   Therefore, his basis for challenging Finding Nos. 5, 10, and 11 fails.   In sum, Finding Nos. 5, 10, and 11 are supported by substantial evidence in the record and comport with applicable law.

---

2 The ALJ did ask whether Plaintiff experiences pain as a result of his right leg fracture in 2013 (Tr. 48-49).   Plaintiff confirmed that he experiences pain from that condition and that once a month the pain gets bad enough to require use of a cane (Tr. 48-49).   They also discussed Plaintiff's backpain, the failure of therapy to provide relief, and that sitting is difficult because it causes back and rib pain (Tr. 49-51, 58).   Additionally, Plaintiff testified he can sit comfortably for maybe half an hour to 45 minutes depending on whether he is in a comfortable position, after that his lower back and right leg hurt (Tr. 66).   But Plaintiff seemed to contradict himself by also testifying he plays video games on his Xbox One for as long as an hour to an hour and a half (Tr. 62).

3 Specifically, the ALJ limited Plaintiff to only standing/walking four hours in an eight-hour workday with the option to alternate between sitting and standing positions every 30 minutes, taking just a minute or two to change position (Tr. 19).

4 The ALJ restricted Plaintiff to occasionally stooping, kneeling, crouching, crawling, and climbing ramps/stairs, but he may never climb ladders, ropes, or scaffolds (Tr. 19).

5 The ALJ indicated Plaintiff may not be exposed to vibrations or hazards (Tr. 19).

<u>Conclusion</u>

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (<u>Id.</u>).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

February 24, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

16